Opinion issued June 2, 2005 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00005-CV
________
 
IN RE UNITEC ELEVATOR SERVICES COMPANY d/b/a VTM ELEVATOR
COMPANY, VTM ELEVATOR COMPANY, NAES CENTRAL, INC., NAES
CENTRAL, INC., formerly known as UNITEC ELEVATOR SERVICES, AND
NAES CENTRAL, INC., d/b/a VTM ELEVATOR COMPANY, Relators
 

 
 
Original Proceeding on Petition for Writ of Mandamus
 

 
 
O P I N I O N
          By petition for writ of mandamus, relators, Unitec Elevator Services Company
d/b/a VTM Elevator Company, VTM Elevator Company, NAES Central, Inc., NAES
Central, Inc., formerly known as Unitec Elevator Services, and NAES Central, Inc.,
d/b/a VTM Elevator Company, challenge the trial court’s orders of April 5, 2004 and
December 20, 2004, denying relators’ motions for leave to designate responsible third
parties in the underlying lawsuit.


 See Tex. Civ. Prac. & Rem. Code Ann. § 33.004
(Vernon Supp. 2004-2005). In their sole issue, relators contend that the trial court
clearly abused its discretion in denying their first, second, and third motions for leave
to designate responsible third parties in the underlying lawsuit. 
          We deny the petition.
          Factual and Procedural Background
          In the underlying lawsuit, real parties in interest Mary Theresa Bryant and
Anna Menses, allege that, on November 1, 2001, while working for Southwestern
Bell Telephone Company (“Southwestern Bell”) at a building located on 3303
Weslayan Street in Houston, they sustained personal injuries when the elevator in
which they were riding fell three stories. Plaintiffs further allege that, although the
relators were responsible for the maintenance of the elevator and had knowledge that
the elevator was having mechanical failures, relators returned the elevator to service
before the accident without ensuring that it was in a safe working condition. 
Plaintiffs have brought claims of negligence and gross negligence against relators and
seek actual and punitive damages.
          David Trujillo and Rawle Frank have intervened in the lawsuit, alleging that
they too were passengers in an elevator located at the Southwestern Bell building on
3303 Weslayan and, following a loss of power, the elevator in which they were riding
fell three floors, causing them personal injuries. Trujillo and Frank have brought
claims of negligence and malice against relators, and seek actual and punitive
damages.


     
Southwestern Bell Telephone Company
          The case was originally set for trial on June 1, 2004. On March 25, 2004,
relators filed a motion for leave to designate Southwestern Bell as a responsible third
party, alleging that (1) plaintiffs and intervenors were employees of Southwestern
Bell at the time of the incident; (2) Southwestern Bell was the owner of the building
in which the elevators were located; (3) Southwestern Bell had the right of control
over the building, its elevators, and its electrical power; and (4) Southwestern Bell’s
conduct was the sole cause of the incident. Plaintiffs, on March 30, 2004, filed an
objection to relators’ motion, asserting that the building was owned by SBC
Communications, a parent company of Southwestern Bell. In their objection,
plaintiffs also assert that relators had failed to plead sufficient facts to support their
allegations that Southwestern Bell was the owner of the building and was responsible
for the incident. On April 5, 2004, the trial court entered an order sustaining
plaintiffs’ objection to relators’ motion for leave to designate Southwestern Bell as
a responsible third party, and denying relators’ motion “as presented.” 
          On November 10, 2004, relators filed a request for reconsideration and an
amended motion for leave to designate Southwestern Bell as a responsible third party,
alleging that the construction of the Southwestern Bell building as well as the
defective design and manufacture of the elevator may have contributed to the
incident. Relators also allege that Southwestern Bell was responsible for the
unreasonably dangerous condition, had a duty to warn of such a condition, and was
responsible for placing the allegedly defective elevator into the stream of commerce. 
Plaintiffs filed an objection to relators’ request for reconsideration and amended
motion on November 17, 2004, renewing their argument that relators failed to plead
sufficient facts to support their allegations concerning Southwestern Bell’s
responsibility for plaintiffs’ and intervenors’ injuries. The request for reconsideration
and amended motion remains pending before the trial court.


 
Unknown vandals
          Relators, on December 1, 2004, filed a second motion for leave to designate
unknown vandals as responsible third parties, alleging that the incident was the result
of a power surge caused by a fault at an off-site transformer, and that this fault was 
caused by unknown vandals who damaged the transformer. Relators assert that
deposition testimony from employees and experts of “Centerpoint Energy,” another
named defendant, support these allegations. Plaintiffs filed an objection to this
second motion on December 8, 2004, arguing that the “vandal theory” was mere
speculation and that relators did not plead sufficient facts to support their allegation
that unknown vandals were responsible for the incident. On December 20, 2004, the
trial court entered an order sustaining “at this time” plaintiffs’ objection to relators
second motion for leave to designate unknown vandals as responsible third parties,
and denying relators’ motion “as presented.”
Centerpoint Energy Houston Electric, L.L.C.
          Plaintiffs originally sued a number of other defendants, including Centerpoint
Energy Houston Electric, L.L.C. (“Centerpoint”). Plaintiffs alleged that Centerpoint
negligently caused a power surge which may have caused the elevator on which the
plaintiffs were riding to suddenly and unexpectedly drop three stories. Plaintiffs also
alleged that Centerpoint negligently created an unreasonably dangerous condition,
failed to correct a dangerous condition, failed to exercise reasonable and ordinary
care to reduce or eliminate the risk of a power surge, and failed to warn of a
dangerous condition. Intervenors made similar allegations against Centerpoint. 
Centerpoint filed a motion for summary judgment on November 8, 2004, arguing that
plaintiffs’ and intervenors’ claims were precluded as a matter of law because there
was no evidence that Centerpoint was negligent or that Centerpoint’s negligence
caused plaintiffs’ and intervenors’ injuries. Plaintiffs nonsuited their claims against
Centerpoint on December 27, 2004, and intervenors’ claims against Centerpoint were
dismissed when the trial court granted Centerpoint’s summary judgment motion on
January 3, 2005.  
          On January 5, 2005, relators filed a third motion for leave to designate
Centerpoint as a responsible third party, alleging that the incident was the result of
a power surge from a fault at an off-site transformer and that Centerpoint supplied the
electricity and controlled the electrical equipment which contributed to the incident. 
Relators acknowledge that their third motion for leave was filed beyond the
statutorily prescribed deadline, but argued that, because all claims against Centerpoint
had been recently dismissed or resolved, good cause existed to permit them to
designate Centerpoint. Plaintiffs filed an objection to this third motion on January
12, 2005, explaining that they had dismissed their claims against Centerpoint because
Centerpoint’s summary judgment motion appeared to have merit, there was no
evidence to support the allegations against Centerpoint, and there was no basis for
Centerpoint to be submitted as a responsible third party. In their objection, plaintiffs
assert that relators had not pleaded sufficient facts to support their allegation that
Centerpoint was responsible for the incident and that the motion was untimely and
made without a showing of good cause to permit the designation of Centerpoint as
a responsible third party within sixty days of trial. On January 17, 2005, the trial
court entered an order sustaining “at this time” plaintiffs’ objection to relators’ third
motion and denying relators’ motion “as presented.” 
          The case was reset for trial on February 7, 2005, and on January 26, 2005, we
granted relators’ motion for temporary relief and stayed all further proceedings in the
trial court to consider their petition.
Standard of Review
          Mandamus is an extraordinary remedy, which is available only when (1) a trial
court clearly abuses its discretion and (2) there is no adequate remedy by appeal. In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004); In re
Supportkids, Inc., 124 S.W.3d 804, 807 (Tex. App.—Houston [1st Dist.] 2003, orig.
proceeding). A trial court clearly abuses its discretion if it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of law. 
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). With respect to a trial court’s
determination of legal principles, “a trial court has no ‘discretion’ in determining
what the law is or applying the law to facts.” In re Prudential, 148 S.W.3d at 135
(quoting Walker, 827 S.W.2d at 840). Thus, a trial court’s failure to analyze or apply
the law correctly will constitute an abuse of discretion and may result in a reversal by
extraordinary writ. Walker, 827 S.W.2d at 840. 
          The requirement that persons seeking mandamus relief establish the lack of an
adequate remedy by appeal is a “fundamental tenet” of mandamus practice. Id. The
writ will issue “only in situations involving manifest and urgent necessity and not for
grievances that may be addressed by other remedies.” Id. Accordingly, it is well-settled that mandamus will not issue where there is “a clear and adequate remedy at
law, such as a normal appeal.” Id. (emphasis added).
Mandamus
          In their sole issue, relators argue that the trial court abused its discretion in
denying their motions to designate Southwestern Bell, unknown vandals, and
Centerpoint


 as responsible third parties because chapter 33 of the Civil Practice and
Remedies Code “mandates the fair and accurate apportionment of responsibility
among all potential tortfeasors.” Relators further argue that, because the trial court’s
rulings “deprive them of their right to have the entire case, including the issues of
proportionate responsibility, submitted at one time,” they have no adequate remedy
by appeal.
Designation of Responsible Third Parties 
          In regard to relators’ argument that the trial court abused its discretion in
denying relators’ motions to designate responsible third parties, we note that a trier
of fact, as to each cause of action, is required to determine the percentage of
responsibility for each claimant, each defendant, each settling person and each
responsible third party who has been designated under section 33.004 of the Texas
Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a). 
“Responsible third party” is defined to mean “any person who is alleged to have
caused or contributed to causing in any way the harm for which recovery of damages
is sought, whether by negligent act or omission, by any defective or unreasonably
dangerous product, by other conduct or activity that violates an applicable legal
standard, or by any combination of these.” Tex. Civ. Prac. & Rem. Code Ann.
§ 33.011(6).


 
          Civil Practice and Remedies Code section 33.004 sets forth the procedures for
designating responsible third parties: 
 
            (a)     A defendant may seek to designate a person as a responsible third
party by filing a motion for leave to designate that person as a
responsible third party. The motion must be filed on or before the
60th day before the trial date unless the court finds good cause to
allow the motion to be filed at a later date.

                    . . . . 
 
(f)A court shall grant leave to designate the named person as a
responsible third party unless another party files an objection to
the motion for leave on or before the 15th day after the date the
motion is served. 

(g)If an objection to the motion for leave is timely filed, the court
shall grant leave to designate the person as a responsible third
party unless the objecting party establishes: 
 
                    (1)     the defendant did not plead sufficient facts
concerning the alleged responsibility of the person
to satisfy the pleading requirement of the Texas
Rules of Civil Procedure; and 
 
(2) after having been granted leave to replead, the
defendant failed to plead sufficient facts concerning
the alleged responsibility of the person to satisfy the
pleading requirements of the Texas Rules of Civil
Procedure. 
 
          (h)     By granting a motion for leave to designate a person as a
responsible  third party, the person named in the motion is
designated as a responsible third party for purposes of this chapter
without further action by the court or any party.
Tex. Civ. Prac. & Rem. Code Ann. § 33.004. We consider whether the trial court
clearly failed to analyze or apply these statutory provisions to relators’ designations
of Centerpoint, unknown vandals, and Southwestern Bell. Walker, 827 S.W.2d at
840.
          Designation of Centerpoint
          Relators filed their motion to designate Centerpoint on January 5, 2005, less
than sixty days before the February 7, 2005 trial setting. Thus, the motion was
untimely unless the trial court found good cause to allow the motion to be filed. Tex.
Civ. Prac. & Rem. Code Ann. § 33.004(a). Relators argue that such good cause
existed because plaintiffs nonsuited their claims against Centerpoint and the trial
court granted Centerpoint’s summary judgment, dismissing intervenors’ claims,
within sixty days of trial. Relators assert that, prior to the nonsuit and summary
judgment, Centerpoint was a named defendant and would have been submitted to the
jury and that plaintiffs’ last-minute non-suit should not destroy their right to designate
Centerpoint as a responsible third party.
          Plaintiffs counter that the trial court did not abuse its discretion in rejecting
relators’ assertion of good cause because relators waited over 18 months after
plaintiffs named Centerpoint as a defendant to seek leave to designate Centerpoint as
a responsible third party, and relators knew that plaintiffs could non-suit their claims
at any time. Plaintiffs further argue that, at the latest, relators should have filed their
motion for leave when Centerpoint filed its summary judgment motion seeking
dismissal of all claims against it. Instead, relators waited over sixty days until after
the summary judgment motion was filed before filing their motion for leave. 
          Relators have not established that the trial court clearly abused its discretion
in rejecting the assertion of good cause to permit them to designate Centerpoint as a
responsible third party within sixty days from the date of trial. Because relators have
not established that the trial court committed a clear and prejudicial error of law in
rejecting their assertion that good cause existed to allow their motion to designate
Centerpoint as a responsible third party, we hold that the trial court did not abuse its
discretion in denying their motion for leave to designate Centerpoint as a responsible
third party.
          Designation of unknown vandals
           On December 2, 2004, relators filed their first answer containing an allegation
against unknown vandals, repeating the allegations made in their second motion for
leave to designate unknown vandals as responsible third parties. Relators further
allege that these vandals “committed a criminal act” that caused plaintiffs’ injuries
and that the fault resulting in the power surge which caused the incident “was the
result of criminal conduct, including vandalism . . . by unknown third party vandals.” 
          Plaintiffs contend that relators designation of the unknown vandals was
untimely. Section 33.004(j) provides in relevant part:
          (j)      Notwithstanding any other provision of this section, if, not later
than 60 days after the filing of the defendant’s original answer,
the defendant alleges in an answer filed with the court that an
unknown person committed a criminal act that was a cause of the
loss or injury that is the subject of the lawsuit, the court shall
grant a motion for leave to designate the unknown person as a
responsible third party if:
 
                    (1)     the court determines that the defendant has pleaded
facts sufficient for the court to determine that there
is a reasonable probability that the act of the
unknown person was criminal;
 
                    (2)     the defendant has stated in the answer all identifying
characteristics of the unknown person, known at the
time of the answer; and 
 
                    (3)     the allegation satisfies the pleading requirements of
the Texas Rules of Civil Procedure.
 
Tex. Civ. Prac. & Rem. Code Ann. § 33.004(j).


 Plaintiffs argue that, under
subsection (j), because relators did not file an answer containing an allegation that
unknown vandals committed criminal acts that caused the plaintiffs’ injuries within
sixty days after filing their original answer, they could not seek to designate the
unknown vandals as responsible third parties.
          Conversely, relators assert that the language “Notwithstanding any other
provision of this section,” contained at the beginning of subsection (j), should be
construed to mean that in addition to the other available timetables and means to
designate responsible third parties under the section 33.004, subsection (j) affords a
defendant an independent means to designate unknown individuals within sixty days
of a defendant’s answer to preclude a plaintiff’s right to object. Relators further
assert that subsection (j), which prescribes a strict pleading requirement for
designating unknown persons, does not provide the exclusive means for designating
the unknown vandals and that plaintiffs’ interpretation of the statute is contrary to the
statute’s liberalization of rights afforded to defendants under the revised section
33.004. 
          When we construe a statute, we begin with the words used. Cities of Austin,
Dallas, Fort Worth, and Hereford v. Southwestern Bell Tele. Co., 92 S.W.3d 434, 442
(Tex. 2002). If a statute is clear and unambiguous, we need not resort to the rules of
construction or other aids to construe it. In re Canales, 52 S.W.3d 698, 702 (Tex.
2001). However, we may also consider the statute’s objectives, the legislative
history, former statutory and common law, and the consequences of a particular
construction. Id. 
          Applying the plain language of subsection (j) and considering section 33.003
as a whole, we find that the statute clearly and unambiguously requires a defendant
seeking to designate an unknown person as a responsible third party, based on the
person’s commission of criminal acts causing the loss or injury that is the subject of
the lawsuit, to file an answer containing such allegations no later than sixty days from
filing its original answer. Tex. Civ. Prac. & Rem. Code Ann. § 33.004(j). Here, the
record establishes that relators did not file an answer containing the allegations
against the unknown vandals until well after sixty days after filing their original
answer.


 Because relators did not timely file an answer containing the required
allegations, they are precluded from designating the unknown vandals as responsible
third parties. Accordingly, we hold that the trial court did not abuse its discretion in
denying relators’ second motion for leave to designate the unknown vandals as
responsible third parties.
          This holding is not inconsistent with the liberalization of rights afforded a
defendant in revised section 33.004. While revised section 33.004 clearly recognizes
the right of a defendant to submit an unknown person as a responsible third party to
a jury for the jury’s apportionment of responsibility, subsection (j) provides that as
a prerequisite to designating such an unknown person, a defendant must comply with
certain pleading requirements likely designed to furnish the other parties with notice
that the defendant intends to assert that the claimant’s injuries were caused by an
unknown criminal. Relators’ argument, that subsection (j) merely affords a defendant
an additional and independent means to designate unknown persons as responsible
third parties, would render the pleading deadlines imposed in subsection (j)
meaningless. A defendant would never have an incentive to comply with the
pleading requirement in subsection (j) when it could simply wait to designate the
unknown person sixty days before trial, and obtain a strategic advantage not intended
by the legislature.



          Designation of Southwestern Bell 
          Relators’ motion to designate Southwestern Bell as a responsible third party
was filed more than sixty days before the original trial setting, and thus was timely. 
Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a). The trial court was required to
grant relators’ motion for leave to designate Southwestern Bell as a responsible third
party unless another party timely objected. Tex. Civ. Prac. & Rem. Code Ann.
§ 33.004(f). Plaintiffs’ timely objected within fifteen days from the date the motion
for leave was served. Tex. Civ. Prac. & Rem. Code Ann. § 33.004(g). However,
even after the plaintiffs timely objected, section 33.004(g) still required the trial court
to grant relators’ motion for leave, unless plaintiffs established that (1) relators did
not plead sufficient facts concerning the alleged responsibility of Southwestern Bell
to satisfy the pleading requirements of the Texas Rules of Civil Procedure, and (2)
after having been granted leave to replead, relators still did not plead sufficient facts
concerning the alleged responsibility of Southwestern Bell. Tex. Civ. Prac. & Rem.
Code Ann. § 33.004(g). 
          Here, relators specifically alleged that plaintiffs and intervenors were
employees of and were working for Southwestern Bell at the time of the incident, that
Southwestern Bell was the owner of the building where the incident occurred, and it 
had the right of control over the building, its elevators, and its electrical power.
Relators further alleged that Southwestern Bell solely caused the incident. These
detailed pleadings, concerning the responsibility of Southwestern Bell, appear to be
sufficient to meet the requirements of the Texas Rules of Civil Procedure. 
          The record does not demonstrate that plaintiffs established (1) that relators
failed to plead sufficient facts concerning the alleged responsibility of Southwestern
Bell or (2) that relators failed to plead sufficient facts concerning Southwestern Bell’s
responsibility after having been granted leave to replead. We note that the plain
language of section 33.003 makes clear that, in determining whether to grant relators’
motion for leave to designate Southwestern Bell as a responsible third party, the trial
court was restricted to evaluating the sufficiency of the facts pleaded by relators and
was not permitted to engage in an analysis of the truth of the allegations or consider
evidence on Southwestern Bell’s ultimate liability. In re Arthur Anderson, 121
S.W.3d 471, 478 n.20 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).


 
          Rather than argue that they met the burdens set forth in section 33.004,
plaintiffs argue that, because relators filed a request for reconsideration and amended
motion to designate Southwestern Bell as a responsible third party, which is still
pending, mandamus relief is premature. Nevertheless, the fact remains that the trial
court entered a written order denying relators’ motion for leave to designate
Southwestern Bell as a responsible third party, and we can discern no reason for the
trial court’s denial of the motion. However, while mandamus is appropriate to correct
a trial court’s erroneous interpretation or application of the law, the extraordinary writ
will issue only if it is shown that the relator has no adequate remedy by appeal. 
Walker, 827 S.W.2d at 840. 
Adequate Remedy by Appeal
          Relators argue that they do not have an adequate remedy by appeal because (1)
they may lose substantive rights to seek post-judgment contribution from potential
joint tortfeasors, (2) they will lose their substantial right to have one jury apportion
liability among all responsible parties, (3) this Court’s intervention would give
needed and helpful direction on the right to designate responsible third parties, and
(4) it would be unfair to require the parties and the trial court to expend costs and
resources in a highly complex trial that would be subject to reversal on appeal. 
          Initially, we must reject relators’ argument that mandamus relief is appropriate
because they may lose their right to bring a post-judgment claim for contribution
against Southwestern Bell.


 Relators are appealing the denial of a motion for leave
to designate Southwestern Bell as a responsible third party, not the denial of a right
to join Southwestern Bell in the lawsuit as a contribution defendant. Furthermore,
even assuming that relators may lose the right to seek post-judgment contribution
from Southwestern Bell,


 we do not see how it is relevant in determining the
adequacy of an appellate remedy in the instant suit.


 In re Prudential, 148 S.W.3d
at 139 (stating that “a separate lawsuit is simply not an appellate remedy.”) (emphasis
in original). 
          In regard to their remaining arguments in support of their request for
mandamus relief, relators rely primarily on In re Arthur Anderson, 121 S.W.3d 471. 
In In re Arthur Andersen, after the collapse of Enron, investors brought claims against
Andersen, Enron’s accounting firm, for fraud and misrepresentation. 121 S.W.3d at
474. Andersen sought to join multiple financial institutions as responsible third
parties, alleging that these institutions were responsible for plaintiffs’ injuries. Id. at
474.


 The trial court denied Andersen’s motion, and Andersen sought mandamus
relief. Id. Our sister court found that the trial court had abused its discretion in
denying the motion and further found that Andersen had no adequate remedy at law. 
Id. at 485-86. In support of its holding that Andersen had no adequate remedy at law,
the court stated that the law was unsettled on whether Andersen could file a separate
post-judgment suit for contribution against the third party financial institutions. Id.
at 485. The court further stated that even if Andersen could pursue a separate post-judgment suit for contribution, it would still be losing “the opportunity to have one
jury apportion liability among all responsible third parties.” Id. More importantly, the
court explained that the financial institutions’ absence would “likely profoundly
affect the conduct and outcome of [the] suit in ways unlikely to be apparent in the
appellate record” and that “due to the enormity of the facts surrounding the collapse
[of Enron],” a separate suit or successful appeal would result in an “enormous waste
of resources.” Id. at 486. Based on this enormous waste of resources, combined with
the possibility that Andersen might not be able to prosecute a separate suit or a
successful appeal, the court found that there was no adequate remedy at law. Id.
          In re Arthur Andersen is substantively distinguishable from the instant case
because here, we are not dealing with the complex, intertwined facts surrounding the
collapse of a major corporation, but a relatively straightforward personal injury case. 
In this case, the trial court’s error can be corrected, if necessary, through a “normal
appeal,” which would not result in an “enormous waste of resources” similar to that
in In re Arthur Andersen. The circumstances presented in this case are more
comparable to those presented in In re Martin, 147 S.W.3d 453 (Tex.
App.—Beaumont 2004, orig. proceeding), than those presented to our sister court in
In Re Arthur Andersen. 
          In In re Martin, the parents of a child who drowned in a pool sued the pool
owners. 147 S.W.3d at 455. The pool owners filed a motion for leave to join as a
third party the person who was responsible for supervising the child at the time of the
incident. Id. Even though the court found that the defendant properly attempted to
join the third party and that there was no apparent reason why the trial court denied
the motion, the court held that mandamus relief was not warranted because relator’s
complaint could be addressed on appeal and a new trial ordered if needed. Id. at 459. 
As explained by the court: 
In certain circumstances, as in Andersen, an appeal may be an
inadequate legal remedy, but we conclude the complaint in this case can
be addressed on appeal and a new trial ordered if necessary. As the
Andersen court said, “The additional expense and effort of preparing for
and participating in two separate trials does not, standing alone, justify
mandamus relief.”

Id. (citations omitted). 
          In In re Prudential, the Texas Supreme Court recently restated that “an
appellate remedy is not inadequate merely because it may involve more expense or
delay than obtaining an extraordinary writ.” 148 S.W.3d at 136. The relator in In re
Prudential sought mandamus review of a trial court’s refusal to enforce a contractual
pre-suit waiver of trial by jury. Id. at 129. In determining whether the relator had an
adequate remedy by appeal, the supreme court stated that it was required to engage
in a “careful balance of jurisprudential considerations” implicating both public and
private interests. Id. at 136. The supreme court emphasized:
Mandamus review of significant rulings in exceptional cases may be
essential to preserve important substantive and procedural rights from
impairment or loss, allow the appellate courts to give needed and helpful
direction to the law that would otherwise prove elusive in appeals from
final judgments, and spare private parties and the public the time and
money utterly wasted during eventual reversal of improperly conducted
proceedings. An appellate remedy is adequate when any benefits to
mandamus review are outweighed by the detriments. When the benefits
outweigh the detriments, appellate courts must consider whether the
appellate remedy is adequate.
 
Id. While the supreme court noted that whether an appellate remedy is adequate
“depends heavily on the circumstances presented and is better guided by general
principles than by simple rules,” it was also careful to point out that mandamus relief
should be used selectively and that appellate courts “must be mindful . . . that the
benefits of mandamus review are easily lost by overuse.” Id. at 137-38. The supreme
court determined that mandamus review was appropriate in In re Prudential because
the trial court’s denial of the relator’s contractual right could not, in any “real sense,”
be rectified on appeal, and that the contractual right would be lost forever. Id. at 137. 
The court stated that “[e]ven if [relator] could somehow obtain reversal based on the
denial of its contractual right, it would already have lost a part of [its right] by having
been subject to the procedure it agreed to waive.” Id. at 138.
           In conducting our balance of jurisprudential considerations, we note that it is
true that relators, under chapter 33 of the Civil Practice and Remedies Code, have a
right to have one jury apportion liability among all responsible parties. It is also true
that, in certain circumstances, a regular appeal of a trial court’s order denying a
defendant its rights afforded under chapter 33 may be inadequate and that mandamus
relief may be appropriate. See In re Arthur Andersen, 121 S.W.3d at 483. We
recognize that if relators eventually have to appeal the trial court’s ultimate judgment,
conducting a second trial may result in a waste of judicial resources, compounded by
the fact that the only available remedy will likely be to order a new trial, as to all
parties and all issues, so that the jury may apportion responsibility among all persons
who should have been designated under the rules. However, we also have to
recognize that, in spite of any error committed by the trial court, it is entirely possible
that relators, and not the plaintiffs and intervenors, may ultimately prevail at trial. 
Moreover, it is entirely possible that other errors presented on appeal may necessitate
the order of a new trial. Thus, while we may consider the additional expense and
effort of preparing for and participating in another subsequent trial, this factor does
not, standing alone, justify mandamus relief if there is an adequate remedy by appeal.
In re Prudential, 148 S.W.3d at 139.
          As instructed by the supreme court in In re Prudential, we are mindful that
mandamus relief should be used selectively and that the benefits of mandamus review
are easily lost by overuse. Id. at 138. Although the trial court’s order denying
relators’ their right to designate responsible third parties is not a mere “incidental”
ruling, the instant case, a relatively straightforward personal injury action, is not
“exceptional.” We conclude that granting mandamus relief in this case would
encourage litigants to seek mandamus review of all trial court rulings under chapter
33, even in cases, like here, that do not present extraordinary circumstances like those
presented in In re Arthur Andersen. This would have the effect of adding
unproductively to the expense and delay of civil litigation by enabling parties to seek
extraordinary relief from appellate courts on rulings related to a trial court’s
management of all kinds of cases, whether exceptional or not. The potential for
appellate courts and parties to incur expense and delay in seeking review of these
types of rulings by mandamus is illustrated by the fact that this Court has found, after
extensive briefing and argument by the parties and after substantial deliberation, that
the trial court did not clearly abuse its discretion in denying two of three motions at
issue in this original proceeding. Moreover, in regard to the third motion, relators
have pending before the trial court a request for reconsideration and amended motion
to designate Southwestern Bell as a responsible third party.
          As emphasized by the supreme court, whether mandamus relief is appropriate
“depends heavily on the circumstances presented.” See In re Prudential, 148 S.W.3d
at 137. Here, any benefits to mandamus review are outweighed by the detriments. 
Id. Accordingly, we agree with the reasoning and persuasive authority of In re
Martin, and we hold that relators have an adequate remedy by appeal with respect to
the trial court’s denial of its motion for leave to designate Southwestern Bell as a
responsible third party. Because relators have an adequate remedy by appeal, the
petition for writ of mandamus must be denied.
          Conclusion
          Because the trial court did not abuse its discretion in denying relators’ second
motion for leave to designate unknown vandals as responsible third parties or in
denying relators’ third motion for leave to designate Centerpoint as a responsible
third party, and because relators have an adequate remedy by appeal with respect to
the trial court’s denial of its motion for leave to designate Southwestern Bell as a
responsible third party, the petition for writ of mandamus is denied in all respects. 
Having disposed of this original proceeding, we lift the stay imposed by our order
dated January 26, 2005.
 
 
                                                             Terry Jennings
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Alcala.
Justice Nuchia, concurring in result only.